And we will now hear argument in the case of Jimenez v. Moore. Your Honor, just a minute to have a seat there, if you will, please. Yes, Your Honor. No, you can stay there. Don't start yet. Oh, I apologize. Okay, I think we're all set now. Please proceed. May it please the Court, my name is Daniel DiMaria. I represent Appellant Isaac Jimenez alongside Mr. Nguyen. And I would like to point out that Mr. Jimenez's mother and uncle are in the audience there. The trial court's error in this matter in admitting gang expert Ben Aarons' testimony had a substantial and injurious effect on the verdict. In Davis, the U.S. Supreme Court made it clear that there are no open-ended exceptions from the confrontation requirements to be developed by any of the courts. And in Bolton v. New Mexico, the U.S. Supreme Court prohibited the type of surrogate testimony we had in this case by the gang expert, Mr. Aarons. In that case, the court basically precluded the prosecution from introducing a lab report containing testimonials. On the issue of substantial and injurious effect, what are the points that were established by the testimony in this case that you consider to have been improper that were not covered by other cumulative evidence? So, first of all, Your Honor, there was no limiting instruction which prohibited or which informed the jury do not consider any of the testimony other than, for the truth of the matter asserted, basically. Then, Your Honor, Daniel and David Ibarra, they both testified under cooperation agreements which basically made their testimony suspect. I don't think you're answering my question. My question is, what are the factual points that were provided by the testimony that you think was bad under the confrontation clause but that was not covered? What did he contribute that was not covered by other testimony in the record? Oh, I apologize, Your Honor. First of all, appellant's alleged gang moniker. There's absolutely no other evidence of his gang moniker or gang nickname other than the gang expert's testimony. Then, secondly, the statement of facts in the charging documents, that was Exhibits 141 and 142. The expert relayed facts from those cases that were the robberies, the kidnappings, and so on, and there's no other evidence as to that other than the statement of facts which the expert contributed. What was the role of those facts from Exhibits that he gave additional detail about the convictions in 141 and 142? What were those? What was the role of those in convicting Jim Jimenez? It certainly went to the special circumstance allegation. It also went to the gang enhancement. But more importantly, it would have absolutely poisoned the jury towards Mr. Jimenez by introducing this incredibly prejudicial evidence, which Mr. Jimenez simply had no opportunity to cross-examine on or to challenge, given the manner in which it was raised, through effectively a circuit witness. Counsel, I guess what troubles me is this. I, as you very well know, this is an AEDPA case, and under the AEDPA standard, you have a very heavy burden to overcome errors made by the state court. And in this case, the state court found that any error along the line you're talking about was harmless. Why is that an unreasonable determination in the context of AEDPA? I would say, first and foremost, it's unreasonable. It's the jury did not receive a limiting instruction. Had the court given the jury a limiting instruction, then I would not be so concerned. I'd have a lot less compelling argument, the lack of limiting instruction, to me. And forgive me, is there a case that you would cite us to that says that you've got to have a limiting instruction in this circumstance, otherwise it's reasonable under AEDPA? I do not have such a case, Your Honor, but I believe this court should hold similar. I understand that. You're a good lawyer. You want us to do something new here. But the reality is, I just, I'm struggling with why the district, not district court, why the state court's harmlessness determination was unreasonable. I just don't see it. And one of the things that they talk about here is that they actually relied, they found that he relied on his own personal knowledge and experience, as opposed to the documentation you were talking about. What's your response to that? All the additional, his opinion was fine, and an expert can absolutely cite the basis for his opinion. I mean, otherwise how could you have expert opinion? But in this case, the expert went far and beyond, and really he testified to investigations done by other police departments, by police reports he had read, and he went into a lot of detail. But, again, I understand this is a controversial area of the law, and I understand why. But that's, with gang testimony, we've had case after case after case of that nature, and the Supreme Court has not condemned it. How do we now turn around and say that you get these experts that infiltrate the gangs, and they understand who does what and so on, and the way it's organized? Why, what authority do we have to basically ignore what the Supreme Court has done in connection with such cases under AEDPA? And I realize, Your Honor, Bull Cummings v. New Mexico was a lab case, not a gang expert case, but I think that same line of reasoning compellingly applies to a gang expert case as well. I understand you feel that, but, again, this is AEDPA. You've got to have a case from the United States Supreme Court, not even a court of appeal, that says what you want, and there isn't any such case, is there? Not directly, Your Honor, but I would refer the court to Kirby v. United States that basically found fundamental error in admitting and evidence records of conviction as proof for any purpose. Well, that's a whole separate issue, isn't it? Well, I mean, there's, of course, case law and regulations about prior bad acts, if you will. But I'm talking about big facts. It's this case where you've got an expert testifying, and under AEDPA you've got to show a Supreme Court case or cases that says that what happened here is contrary to the law. I don't know of any such case. I'd like you to help me. If there is one, please tell me. So I'll take a stab at it a bit differently, Your Honor. In the Williams case, the court did state the facts. The United States Supreme Court said the facts do not need to be identical from one case to another under AEDPA, and that the state court being wrong in and of itself, I guess that goes to the first issue. What part of Williams? Williams was a plurality opinion. It didn't even have a majority in it. It was just badly fractured. Does that somehow control our thinking? I don't know if it would control it. I actually think it should influence this court's thinking and perhaps go back up so the Supreme Court can clarify and perhaps encourage the Supreme Court to take it and clarify their mongrelized opinion. I mean, Williams is such a mess, as Your Honor pointed out. It's difficult to decipher its plurality. Certainly, I would say even if this court weren't to send this case up, that basically at some point the U.S. Supreme Court will revisit Williams. Perhaps it will. Do you want to take any of your time in the meantime? Yes, the last minute, 50 seconds, please, Your Honor. Okay. Thank you. Thank you. All right. Good morning. Ms. Webb, right? Yes, yes. Good morning, Your Honors. May it please the courts, Deputy Attorney General Taylor Wynn on behalf of Respondent. The district court properly denied habeas relief in this case, and that judgment should be remanded. As Your Honor just mentioned, under AEDPA, petitioner is not entitled to his federal confrontation clause claim because there is no clearly established federal law here. Let me just ask you this. I've kind of just spoken with your distinguished colleague about Williams. How are we supposed to treat Supreme Court plurality opinions where there's no majority and even the plurality is badly fractured? Is that controlling Supreme Court authority for purposes of AEDPA? It is not, Your Honor, and this court has stated that that opinion is so fractured that it does not constitute clearly established federal law. And if any, in the past, in the AEDPA context, have we ever applied a plurality opinion as controlling law? I am not aware, Your Honor, where a plurality opinion has been applied as clearly established law. But in respect to Williams, I mean, it gives enough indication on the very issue at hand that this court can consider Williams as a statement from the Supreme Court, although it's not a clearly established law. And where there is no clearly established law from the Supreme Court, under AEDPA, the state court cannot unreasonably apply clearly established law. And even the closest thing we do have is the Williams case. Williams, in the plurality opinion, does state that an expert is permitted to rely on hearsay evidence in explaining his or her opinion and how his or her opinion is, how those facts are considered in that opinion. Williams, there was other, particularly circumstantial evidence that validated that the lab had done the analysis. The sample was sent to the lab. The lab then sends out a result. Now, it was kind of a black box, but there was some evidence. Here, what he's contending is that the elements about the description of what these conviction documents stood for and what were the surrounding circumstances and how that fit into the operation of this gang, there was no other evidence of any of those points. And all of that was based on reading police reports, interview notes, exactly the kind of stuff that Melendez-Diaz says is not appropriate. You cannot read police reports. They're testimonial. They're quintessentially testimonial. Yes. With respect to the police report, the expert here mentioned two police reports that he briefly looked at. On one, he said that he reviewed a police report and learned that an individual named Philip Rendon was a gang member. But the officer here, in mentioning that, also testified that he knew Rendon personally. He knew where he lived. He knew what kind of work he does. He also has, the expert has done, has interactions with this particular individual, Mr. Rendon, as well as knew, as investigated, some of the crimes that he's committed. So. I gather, and this is kind of a follow-on of my colleague's comment, and I have under my notes, I see it, ER 27, the magistrate judge indicated in the district judge, it dotted in a footnote a reference saying that the California Court of Appeals, in quotes, arguably unreasonably applied, clearly established federal law, when it determined that Aaron's reliance on the Rendon police report did not violate the confrontation clause. I gather your response to that is, well, in this case, he knew this man. He knew a lot of value and so on, so his information could have been independently determined. Is that the government's response to that point? Yes, Your Honor. I would submit that. The majority of his opinion, with respect to Mr. Rendon, is based on his own knowledge, and his mere mention, very briefly, that he read a police report, and he also learned that this person is a gang member, is just cumulative of his testimony of his own personal knowledge. Well, but I want to focus specifically on Exhibits 141 and 142, which is what your opposing counsel said is something that's not covered cumulatively by other evidence that he was providing additional detail about the convictions referred to in those documents and about what the crimes were about, and he got those details from police reports. Am I right? And nothing else on the record supported the points that he claimed about those. Am I wrong on that? A little bit, Your Honor. Exhibit 140 and 141 and 142 are certified records. They're certified court records of past convictions as to the Eastside Crazy Gang members' past convictions, and specifically in discussing the certified judgments of conviction, the expert did discuss the convictions and things in there. However, in Melendez-Diaz's submission. Additional details that are not in the conviction documents and that only came from testimonial police reports. Is that correct? I'm sorry, Your Honor. I don't remember him adding any facts from police reports that he read when discussing the certified records. The expert here actually, when discussing that, said that he was personally involved in the investigation of two of those crimes, two of those three crimes. And so to the extent that he discussed any additional facts that's outside of that, he had personal knowledge as to two of those investigations. He did admit that on one of the convictions he was not at all involved. But to the extent that this court finds any of that being testimonial hearsay, this court in Unitas v. Vera has stated that a gang expert's opinion gleaned from testimonial statements, combined with his own knowledge and observation, turns his opinion into an original product which is then tested under cross-examination. And that's exactly what happened here, Your Honor. And to the extent the certified conviction records, Melendez-Diaz, the Supreme Court, says that those documents are probably properly admitted in the court and despite their hearsay status. Are you saying then, in response to my colleague's question, that even if he did cite things not in 141 and 142, and he knew about them personally, and maybe he didn't know about them personally, there's enough evidence elsewhere that it renders it harmless. Is that a fair statement? That is correct, Your Honor. Even assuming some error occurred here, the state court reasonably applied Chapman. After Davenport, it's almost a double standard. It's both application of Chapman and then application of Brecht. So to even get over those hurdles, the court here reasonably applied Chapman. And then even if the petitioner can show that unreasonable application, they then have to show Brecht. And there is ample evidence here of other properly admitted evidence that shows this particular petitioner is a gang member and his crimes were gang related. And so this, to the extent there is error, it's cumulative of other improperly admitted error. Harmlessness is the government's primary fallback, if you will. Yes, but I would submit that there was no error here in the first place. Unless the court has additional questions. Other questions by other colleagues? I take none. Thank you. Very well. All right. You have some rebuttal time. Thank you, Your Honor. Your Honor, Exhibit 141 dealt with four defendants, Cardenas, Parra, Santana, and another Parra. One's Ismael Parra, one's Miguel Parra. In any event, Detective Ahrens admitted he was only, and I quote, aware of the case. And he also said, and I quote, he did not have any direct interaction with any of the defendants in this case. That's at page 1406-1407 of the excerpt of records. Nevertheless, he was allowed to relay very specific details about those individuals. If I recall correctly, that was, let's say you're right, say there's an error in this, but there were lots of other things that he relied upon that colored his testimony. If there is an error of the type you're talking about, does that overcome the ed problem for you? I really would say it does, Your Honor. And, again, I'd rely on Williams. I know Your Honor's not a big fan of Williams, and perhaps there is no authority on which we can rely on a plurality statement. And if there isn't, doesn't that leave us with EDPA, if you will, overcoming your position? I think this Court can nevertheless depart from EDPA. From EDPA. Not from EDPA, Your Honor. Basically, I think there's nothing. I'm not aware of anything that says the Court cannot rely on a plurality opinion. But we have to in order to sustain your position, right? Right, dude. The Court would have to in order to sustain my position. That is correct, Your Honor. So do you agree with your opposing counsel that because the officer was involved in two of the investigations, he, based on his own personal knowledge, could testify as to those, and so your claim really comes down to the remaining one? I recall Detective Aarons making repeated comments that he was relying on hearsay, Your Honor. So from that perspective, if what my colleague said was accurate, I wouldn't disagree. But I do think the detective made it quite clear in numerous instances, as I pointed out, that he was relying on hearsay, which Mr. Jimenez never had a right to confront the declarative. And it was all testimonial. And so in that regard, I would not agree. Okay, your time is up. Let me ask my colleague. So does either have additional questions? All right, thanks to both counsel for your helpful argument. We appreciate it. The case just argued is submitted. Thank you. Good day to you both.
judges: SMITH, COLLINS, LEE